Case number 18-3390, Lori Laskaris et al. v. Fifth Third Bank. Oral argument not to exceed 15 minutes per side and Ms. Blumkatz for the appellant. Good afternoon your honors. May it please the court. I'm Rachel Blumkatz on behalf of the appellants and I'm here today with Stuart Scott and I would like to reserve five minutes of my time for rebuttal if I may. Thank you. When Fifth Third drafted this contract it promised its early advanced customers a 120% APR. It didn't have to. Other banks that have this exact same loan explicitly told their customers that the APR would increase if the loan were APR for a loan like this and then explicitly told customers to go out and compare that APR with other loans, other lending vehicles. And that's something that's only possible to do if Fifth Third was using the definition of APR that's generally accepted in the industry. And then Fifth Third breached that contract, breached that premise by not actually providing a loan with a 120% APR. Now the bank's contract also said that the loan would cost one dollar for every ten dollars borrowed. We don't deny or dismiss that language. But these terms are incompatible and when you have the presence of irreconcilable terms that makes a contract ambiguous and it can't be dismissed on a motion to dismiss on a 12b6 like the district court did here. So this last point you referring to the summary of key features in terms and conditions. So your point is it's true if you focus just on that language they win but the problem is we can't just focus on that language. We have to look at the underlying contract. Is that the way to look at it? Of course. The contracts always have to be read as a whole. That's one of our basic canons of construction. And the contract, that first page, those key terms that you're talking about, Your loan would cost one dollar for every ten dollars borrowed but also that the loan would carry a 120% APR. That's in bold on the first page. Later if you look through those terms and conditions there's a chart and explains again very clearly the APR, the annual percentage rate, 120%. And again that's what makes this contract different from what other banks do. It would have been very easy for you to put a promise of a fixed unchanging APR. Other banks just say that right there in their contract. You can put some asterisks or whatnot. But here there's a promise for a 120% APR. And to the extent that that conflicts or butts heads with the one for ten promise, you have an irreconcilable or a contract that is ambiguous. Now I understand that Fifth Third argues that it changed the definition of APR in this contract. That it took the generally accepted and federally mandated definition of APR and instead turned it into a formula that's completely arbitrary and results in 120% no matter how long the loan is outstanding. But the problem is that under Ohio law if you're going to change the plain language or the generally accepted definition of a term in a contract, it's not here. Why isn't it? I mean they give a definition of what APR means. We have a case from the Ohio Supreme Court where where annual was defined to mean 360 days, not 365. So why, I guess I don't understand why it isn't clearly defined. Well let me address the contract and then I'm happy to address that case also Your Honor. If you look at, just to start with the definition of APR in the formula that they say that goes to 120% always, the sentence right before that in the definition explains that the APR is the quote cost of credit expressed as a yearly rate. Well the formula that they're giving is not the cost of credit expressed as a yearly rate. Indeed the cost of credit expressed as a yearly rate is verbatim from the federal regulations. What the typical generally accepted APR is. And an APR has to be based on the duration of the loan. If you are going to pay $15 to borrow $100, well that's a lot more expensive if you're borrowing that money for 15 days or two days as opposed to borrowing it for 30 days or longer, right? The daily cost of borrowing the loan is a lot more. So what they have in that formula is not your cost of credit expressed as a yearly rate. This is not a case like Your Honor mentioned, the JTN versus KeyBank case, where there's a clear redefinition of a term in the contract. There's other terms of this contract too that don't make any sense unless you're using the actual definition of APR and not this contrived formula. For example, in the contract the bank tells customers that the purpose of the APR, the whole reason they're even giving the APR, is so that customers can, quote, compare the cost of using this product against other forms of credit. That's on page ID 934. You can't compare, you can't use this APR to compare the cost of credit from this generally accepted definition of APR. Why is that? I guess I'm not sure I understand that. I was wondering why that wasn't just a question begging point. In other words, they say here's what it is, you can use this to compare how other loans work. Why does that tell you they're using one form of APR versus another? Well, it still has a percentage and that percentage might be different with another loan. Well, I think there are a couple answers, Your Honor. First of all, the APR is that you're comparing apples to apples. They're not telling you, oh, you can take this and try and do some calculus and then try and compare it to other loans. And indeed, the district court found in this case that you couldn't calculate the actual APR based on the formula and definition that they give you here. So there would be no way that a consumer could compare unless they were using the same meaning of the term. And indeed, that's the strength of the term APR. That's why Congress mandates that it be put on every single financial disclosure so that people can make comparisons, that they're not tripped up by fine print and things like that. That all seems to go to your Truth and Lending Act claim. Maybe it's deceptive or maybe even there was fraud in the inducement here. But you haven't pled fraud in the inducement and I assume that's because the remedy would be rescission and you don't want rescission, you want damages. It doesn't just go to the Truth and Lending Act claim here, Your Honor, because it's the words in the contract itself tell customers that they can go and compare this. And that goes to, well, what do they mean by the term APR? For example, Fifth Third is very cautious to tell customers, this is an expensive type of credit, right? Go and shop. Go and look. These are words in the contract. It's not just general background statutory Truth and Lending Act stuff. In the contract itself, it's telling customers to go compare. It's also telling customers that this is the cost of credit expressed as a yearly rate. Later on in the contract, it says the APR is the cost of funds borrowed over a one-year period. None of this makes any sense if you're using a contrived arbitrary formula. How do the damages work, if you're right about this? The way they would work is every customer that paid it back before 30 days, you would do a 120%, which means you'd have to lower whatever they paid back, whatever... It would be the differential, Your Honor. Yes. And if I could... And it's just so... Well, just... Sorry, but it's just so... And this is what's funny about the case. I mean, it is a conflict, but that just seems quite unfair, given that they were so front about this is 10%. Well, I don't think, especially at a motion to dismiss, that you can pick and choose which promise you're going to follow. I think about a contract, if you're buying, let's say, lots of cigarettes, right? And your contract says a pack of Marlboros, $6.50 for each pack. That's the lowest price allowed by law. Well, you know you're going to pay $6.50, and maybe you do pay $6.50 for that pack of cigarettes. But if it's not the lowest price allowed by law, well, then you still have a breach of contract claim, because you didn't get what the full promise was. Here, in particular, Fifth Third puts this promise of 120% APR on the first page of its terms and conditions, in bowls. And then, not only does it make this unequivocal promise about how much your loan will cost as an APR, then it doubles down on it, and in the contract, tells you to go and compare it to other lending products. It can't get that advantage in the market and tell you that it's a breach in 20% APR altogether. Is lowest price allowed by law, in your example, really a contract term, or is it just, again, a perhaps fraudulent claim that to induce me to buy the clearly stated term of $6.50? In other words, the contract terms are you pay $6.50, you get cigarettes, that's the contract. Those are the contract terms. And the lowest price allowed by law isn't really a contract term, it's just something to enter into the contract, for which I might have another remedy to get my money back, but not damages. Well, I don't think that's right, Your Honor, because we have to read the words of the contract with their plain meaning, and it's telling the customers as a key feature, not as some disclosure on a back page, not as some asterisk fine print. It's telling its customers the plain meaning of this contract is you get a 120% APR for this loan. It's not like an advertisement. We're not talking about just a sign out somewhere that's saying, you know, this is the lowest price allowed by law, or something like that, that might just be an inducement. This is your contract. This is a key feature based on Fifth Third's own drafting of the contract. And again, then it doubles down on this promise. But for you, instead of putting it doubles down, for you to be right, the meaning of the mines was that there were two things they were learning, the consumer. One was the price of the payday loan wouldn't be more than 10%, and it wouldn't be more than 120% calculated daily APR. That's the way we're supposed to make sense out of this. That's what the contract means, isn't that right? Yeah, I'm not saying that there's... No, but that's what it has to mean for you to be right. Yes, that both of those things are promised in the contract. It's funny to think there was a meeting of the mines about such a strange idea. Well, I'm not sure that it would be the first contract that's poorly drafted or has inconsistent terms, and that's exactly what happens when you have inconsistent terms, you're not sure what the meanings of the mines is. Well, then it can't be dismissed on a motion to dismiss prematurely. If you wouldn't mind just chatting a little bit about that before you'll get your full answer. I assume both of you, at the end of the day, think this is really a legal issue. I mean, is this case going to really profit from discovery? Aren't we just... If you win, aren't we just going to get cross motions for summary judgment shortly? Isn't that all that's going to happen? I don't know what discovery in this case would show, Your Honor. Certainly when you're dealing with a contract that is ambiguous, that has incompatible terms, extrinsic evidence is appropriate. There may be course of dealings with the party, other documents, other things about this loan that are relevant. Are there clients that read this carefully? All of these... It's all set to me. Well, these are all things that can be asked at the next stage of the case. There may indeed even be affirmative defenses that come up. I'm not sure what the next stage will bring. Are you going for a jury trial? Is that what you're expecting to happen here? I don't entirely know what to expect. If extrinsic evidence or other things like that don't clarify the meaning of this contract, then a court would use the canon of contra preferenda and construe against the drafter. But certainly at this stage, when you can't read the contract to harmonize completely, certainly can't do it under their reading, these two terms conflict. You have an ambiguous contract. It can't be decided on a 12 v. 6. I mean, if we found that the contract was ambiguous under Ohio law, that is an issue of fact and that would go to the trier of fact, which would be the jury, would it not? Exactly. Whether a contract is ambiguous is a question of law, but what the contract then actually means is a matter of law. I know your first position, it's unambiguous in your favor, but your backup position is that it is ambiguous and you think because it's ambiguous to trier of fact, there has to be fact-finding. Yes, that's correct, Your Honor. I think these terms here are very difficult to reconcile when you're reading the contract as a whole. There's no fact-finding now, right? All we have right now is a ruling as a matter of law and you as a backup position would like findings of fact, right? That's correct, Your Honor. At a minimum, okay. Thank you. All right, thank you. All right, Mr. Warren. Good afternoon, Your Honor. It's Daniel Warren on behalf of the Appalooh Fifth Third Bank. Plaintiffs are asking this court to replace the definition of APR that is in the early access contract with a different method for calculating APR that is not in the contract. Plaintiffs' non-contractual definition... Warren? I'm sorry. APR, we're missing a word. Annual percentage rate of what? The annual percentage rate is a disclosure in this case. Rate of interest? Is that the word that's missing? Well, if I'm understanding your question, Judge Griffin, the APR can be a periodic rate-based APR or it could be a fixed rate. In this case, it's a fixed rate APR. Is it not an interest rate? It's an interest rate, but not one that's computed periodically. Okay, but it is a rate of interest, right? It's an interest rate in the sense that it is a charge for the cost of credit and it's based on a percentage of the amount of money borrowed. All right. So I think... Normally, an annual percentage rate of interest has something to do with the length of time that the money is borrowed? Not necessarily, Your Honor, and I think... Usually, that's not the case? That is not necessarily the case. I can't speak to whether it's usually or not. It normally is? I don't know whether you can say it's normally or not normally, but I can say that there are different kinds of APR, and I think really the central contention that runs through all of plaintiff's arguments in this appeal is that there is only one way to calculate APR, and there's only one kind of APR. But wait, but maybe a fair way to put that is there's a customary, a traditional way, and if you're not clear, we're going to assume that's the way it's being used. And yet here, we are clear. We have a definition of APR that says it is the transaction fee, which is crystal clear stated as one for 10, or 10%. Well, you have examples. And we have examples. But examples don't always tell you how... An example can line up with the 10%, which is all that happened. It doesn't prove that's how it always works. I mean, it says the APR is a measure of the cost of credit expressed as a yearly rate. And this APR does comport with that definition. And the APR that is defined here... Counsel, your cost of credit is solely dependent on the number of statements that are sent out by the bank. Your bank sends out a monthly statement to these checking account holders. So you send out 12 statements. But other banks might send out quarterly statements. And under your formula, you have 10% times the number of statements. So you come up with a 120% interest rate on a yearly basis on that. But if the other bank only sent out four statements a year, the APR would be 40%, would it not? That is correct, based on the formula. So your APR has nothing to do with borrowing the money on a yearly basis. It has everything to do with how many statements you send out. And that's correct, Judge Griffin. But I also would add that's a standard. Is that what people expect? That is a standard that comes from the TILA regulations that were in effect at that time. So if you look at Regulation Z, 12 CFR 226.14C3, that provision of Regulation Z tells you exactly how to calculate or disclose an APR for a loan. So the customer is supposed to compare the APR and knowing how many statements he gets with how many statements another bank would send out, and that's easy to compare the rate of interest? I mean, that's rather confusing, is it not? To the extent that there's confusion there, as Judge Barrett pointed out, that's strictly a TILA issue. For the contract claim, which is all that's before this Court, the question is, is the definition of APR, as it's disclosed here, clear or ambiguous? Judge Barrett found it misleading. That was his words, that he found the 120% formula to be misleading. Did he not? Yes, and he based that on his view that most of the loans would be out for a shorter period of time. But he also found... If the contract is misleading, as Judge Barrett found, is it not by definition also ambiguous? No, Your Honor, and Judge Barrett also found that. If it's misleading, that means it's subject to one or more interpretations. That's why it is misleading. Do you agree with that? No, Your Honor, I really don't, and I'd like to explain why. Okay, well, I would think that if it's misleading, by definition, it also has to be ambiguous. I don't see how you can differentiate the two. Well, Judge Barrett made that finding, but also found it unambiguous, and his reasoning... I know, I think that's logically inconsistent. Well, Judge Barrett's reasoning was, and I think he was correct, was that the words on the page are not ambiguous. They are subject to only one interpretation, and that one interpretation happens to comport with the crystal clear and multiple provisions which say, you're going to pay one for $10, $1 for every $10 advance, and the contract also said very clearly in quoting the contract that that flat transaction fee of 10% will apply without regard to how long an advance remains outstanding. Okay, but you term that 10% fee as interest on your first page. I mean, I think you agreed with me that APR refers to the annual percentage rate of interest. I think you agreed with me on that. You said on the first page of your summary that the annual percentage rate of interest is 120%, right? It's labeled as interest, and then immediately after that, it defines what that APR is, and... Okay, then it says it's interest, and then it says it's not interest. At page three of your frequently asked questions says, but there is no interest charge associated with the advance. Well, page one of your contract says the annual percentage rate of interest is 120% interest, and then you say there is no interest. I mean, I think that's ambiguous or inconsistent. Is it not? Your Honor, the question I don't think is whether we label this interest or not. The question before the court... I think it's very important to the consumers knowing the consumer wants to compare the rates because they are interested in how much interest you charge. I mean, they're not doing it for other reasons. They want to know what the interest rate is. I think how... One point, the interest rate is this. Another point, you say there is no interest. Judge Griffin, let him answer a couple of these questions. I think much of what you're raising, Judge Griffin, goes to how user-friendly this product is. The word that was used in Judge Barrett's opinion of misleading, I think goes to that as well because he was making that finding based on his view that most of these loans would be taken out for a shorter period of time, so the APR as disclosed in the contract might not be as user-friendly as it should be. That's clearly a TILA question, and these plans have chosen to seek an interlocutory appeal of a breach of contract claim and the dismissal of that claim. As for the different usages of the word interest, interest can be either computed periodically or it can be a one-time upfront fee. In fact, if you look at paragraph 44 of the plaintiff's complaint, they clearly understood that because they alleged, and I'm quoting from their complaint, Judge Griffin, early access loans feature no interest charges that are computed periodically on an outstanding unpaid balance. Rather, the plaintiffs say the interest charges are one time only. In paragraph 126 of their complaint, they said fifth-thirds early access transaction fee is interest. So the question isn't whether we use the word interest or not. The question is how do we define the APR, which is at the heart of what the plaintiff's appeal is all about. But you must concede the normal use of interest is not flat fee. That's not the normal way to use the word. Again, Your Honor, there clearly is an APR calculation out there in the real world that is based on flat fees because if we look at Regulation Z, they even have an example that they put in Appendix F, Example 6. It's cited in their brief. Their hypothetical loan was a $100 loan taken out at the midpoint of the monthly cycle. So it was not for the full But as it related to the transaction fee of 3%, what the example instructed pursuant to Reg Z was that the APR be disclosed as that 3% fee, in our case 10%, times the 12 monthly cycles or 36%. So the APR disclosure as instructed in Reg Z at that time in Example 6 of Appendix F did exactly what we're doing. So I think it's not correct to say that there's only one APR out there and it has to be a periodically computed interest rate basis for APR. I think Judge Larson, did you have a question? Mr. Warren, you say that it's very clear in your contract the annual percentage rate formula. Are there any errors in the contract regarding the examples of the formula? There is, Your Honor. There's a typographical error in one of the formula recitations. It's at 17 of your brief. It's the example of the $100 advance with a $10 transaction fee equals 0.1%. Then you times it by the 12 cycles to get 120%. Is your math wrong there in your contract? Well, yes. I would call it a typo, but in transposing from percentage to decimal points, it left a percentage. Does that create confusion? When your contract itself has a mathematical error where it says it is 0.1% when it actually should have been 10% and you're representing to the customer that it's 0.1%, is that not at least ambiguous, if not misleading? To the extent that that misled anybody, I think that would be an issue for the TILA claim. I don't think it changed the meaning of the narrative. How about an issue of fact for the breach of contract? When your contract has erroneous mathematical computations in it. It's a typographical error that I don't think altered the clear meaning of the narrative text definition that immediately preceded that. So what was left was a transposition of the formula from percentage to decimal, and the percentage sign remained in there. That was the error. What do you think the customers are trying to compare? Are they trying to compare the percentages or something else? I think that if they are trying to use this for comparing purposes, they would be comparing to products with like-structured APRs, of which there were many in existence. In fact, the case that Counsel referred to, I don't know that she mentioned it by name, it was called Small in the District of Colorado, defined the APR for their product almost word for word and precisely the same way that Fifth Third did here. Counsel, I have a practical question. It's not helpful to you, so just to point that out at the beginning, but just as a practical point. This is judgment on the pleadings. We know that one claim is going to proceed. We know there is some overlap. I agree with you, it's not a null set. There's some overlap though between these two claims. There's going to be discovery on one of them. It just seems really funny to me, given the relationship between the two claims, not to allow discovery on both of them and then what seems fair from my perspective is we write something that doesn't mean you lose as a matter of law. It's not suggestive of that at all, but it just acknowledges it's not exactly clear how these normally are used, how people would perceive them and so forth. I don't think that should mean that much discovery. I'm going to tease it up for a summary judgment motion, which is not ruling just on the pleadings. We know the other one is going to take that exact path. I'm just not sure why that isn't a fair thing to do as long as we don't write the opinion in a way that dictates that you would lose as a matter of law at summary judgment. That I would fight very aggressively if I were in your shoes. That seems the opposite of fair, but why shouldn't we think about it that way? Your Honor, I would also like to fight aggressively for affirmance of the opinion as written because this is a contract that doesn't contain an ambiguity. This is a contract that set up front that 120% APR equates to the 1 for 10. It reflects the 1 for 10. It fully disclosed the formula, understanding that there was a typographical error in one of the two times they set forth that formula, not in the other time. It's clear on its face. What this Court ought not to allow is for a party to create an ambiguity by reaching outside the contract for what they contend to be a standard definition of a term that is defined in the contract. That's not the way contract construction works. I didn't say interest is defined in the contract. But APR is, and it's the APR that really is at issue here. APR is very clearly defined, as it was in other cases that reached the same result as this one, for example, small. You say that, you're just saying the question is whether APR is the normal interest way of thinking about it or some flat fee way of thinking about it. Well, this contract said your transaction fee is 10% without regard to how long you as alleged in the complaint, they took out loans sometimes of the same principal amount for different periods of time and always paid the same transaction fee of 10%. But it's compatible to have both promises. Pardon me? It's compatible to have two promises. We won't charge you more than 10%. We won't charge you more than 120% APR calculated daily. You get the better of the promise. Why isn't that consumer friendly and possible? I'm just confused. I thought the contract didn't say we won't charge you more than 10%. It said we will charge you 10%. We will charge you 10%. Not more than. And regardless of how long you keep the loan out. I'd like to make another comment, though, regarding your question, Judge Sutton, about the overlap of these claims. Because I think there is a serious question about appellate jurisdiction here. Appellate jurisdiction, and this is a jurisdictional issue, doesn't ordinarily extend to piecemeal appeals like this one. And certainly not where the two claims arise from the same operative facts. And while the TILA claim has very different elements than the breach of contract claim. It's got to be creating some cognitive distance in your head, right? Well, we fully recognize that these claims have different moving parts. And they have different elements. And they have different forms of relief that are being sought. But what they don't have is a separate operative fact basis. I mean, in both cases, in both claims, the plaintiffs are focusing on the same language and the same contract. And at the bottom of both claims is their grievance that they somehow paid too much for the loans that they took out. But when there's that kind of overlap, notwithstanding the different elements of the claims, notwithstanding the different purposes of a breach of contract or our common law of contract versus our federal regulations regarding TILA. But you've been arguing for quite a while that you can have something be misleading for TILA purposes but not still unambiguous for contract purposes. Isn't that a funny thing to say and then make this jurisdictional argument? I do believe that both are true, Your Honor. It's simply because the elements of the claim are different. You can easily have a TILA violation without having broken a contractual promise. But they both come from the same operative facts. Title VII is very different than breach of contract II, but this court in Lowry overruled a 54B certification in that case. Isn't that the case about the promise in the contract was not to retaliate, so they were the same thing? True. But, I mean, the operative facts here are also bound up with the same contractual provisions. They didn't say we promised not to do a TILA violation. I don't think it's really the same. Well, Your Honor, their claim on both has to do with what they contend to be a promise about APR. I mean, I don't know how you would have more of an identity of operative facts than you would have in that case, notwithstanding the different elements. It does go back. Is there a big difference in discovery in the two claims? I can't speak to that, Your Honor. I think that plaintiffs, in my experience, they tend to take extraordinarily broad discovery on every claim, and I don't think either of these would be any exception to that. I don't think, I think it would be. You say it's the same. I mean, this is another tension point. You say it's the exact same factual predicate for both claims, so presumably this would not add to your discovery cost. Well, I guess I hesitate to believe that we construe contracts depending on the cost of discovery. That's not what I'm saying. I asked my question in a very practical way. That's all I'm referring back to. Because it's the cost of error. You have discovery, and you suddenly realize, wow, this should have gone beyond the 12B6 stage. That's the risk of accepting your point. And that's a claim that, if that's correct, they can raise that at the end of the case the way it's supposed to be done in properly conferred jurisdiction on this court. There was no jurisdiction for appellate review based on a piecemeal appeal of the breach of contract claim alone. Judge Larson, did that cut you off? Judge Griffin, do you have any other questions? No, I don't. Thank you, Your Honors. Thank you. Ms. Mumcatz, you have your rebuttal. Thank you, Your Honors. I'm, of course, happy to answer any of the questions about those points that were raised. I'd like to start, if I may, by talking about that small case that my friend here raised multiple times. That case actually really supports us here. Because in that case, the court found that there was no breach of contract because that contract explicitly told customers in that second line of the promise, it says this will be 120% APR except if the loan is repaid before 30 days. Your APR will increase. Here we have a contract that has an unequivocal 120% APR. And it's not just a technical description or something else. This is not only a key feature of the loan, but it's also telling you what your overall cost of the loan will be. That's an important thing that people look to and rely on in having a promise of an unchanged 120% APR matters. I know, and this is a question that I should have asked, but it's not impossible for a consumer to compare the cost of the loan. It's just more difficult because they aren't using the standard definition. Is that correct? I think if you're looking at what the district court here found, was that a consumer actually couldn't do that. I mean, I don't know if that's a finding of fact to which we have to defer unless clearly erroneous, but it seems kind of like a black or white fact, like it is or it isn't. Well, I think you're comparing the loans because they've told you that this loan equates to a 120% APR, so you can take that. They're telling you what it's going to be. Because you think APR should bear in this contract the standard definition, then you would use the standard definition that others are using and you could compare it much more easily, obviously. But they do have a definition of APR in the contract, and my question is, is it? And then they say you can use this APR to compare. Well, maybe you can, just with great difficulty. Is that then a breach of contract? Well, I'm really bad at math, so I'm not exactly sure how you would take their formula and reformulate it and somehow then be able to compare it to the typical definition of an APR. Maybe that's just because I'm bad at math, but I'd guess that it'd be very hard for a reasonable customer to figure that out. And I think it's important here to know that there is no definition of APR that is based on the number of times that your bank just sends you a summary of your checking account. I think there's a lot of talk here about Regulation Z and what was allowed during the time and whatnot, but I think it's important to make clear that there is not a definition of APR that doesn't take into account either the duration of the loan or your billing cycle when you're being charged for things. There is not a definition of APR. But there is such a definition. It's in the contract. Well, I think I understand that there's that one formula in the contract, but the contract, of course, has to be read as a whole. And even that definition section, even if you're just looking at that fine print, the sentence before it tells you that the APR is the cost of credit expressed as yearly rate. If that is true, then that next sentence that they're relying on doesn't make any sense. It's better read as being an expression of the formula if the loan is a 30-day loan. And indeed, that's exactly what the district court figured was going on. He said, hey, they're using a 30-day term. Which way does it cut that these things are all paid back in fewer than 35 days? And the function of statement cycles seems a little funny in that world. Which way does that cut here? So they're measuring this, they talk about statement cycles, and that makes a lot more sense with a longer-term loan. I'm just trying to figure out which way it cuts that these things are all paid back in fewer than 35 days. Well, if they're paid back in fewer than 35 days, like if they're paid back in 14 days, for example, that means you potentially are going to have a lot higher APR than what they're telling you. I got that, but you don't have a lot of statements in 35 days is my point. Isn't that true? You don't get a statement every day. No, no, of course not. They're usually 30 days or whatever. I'm trying to figure out which way that cuts, that they're using that phrase. I actually think my inclination is it favors you. That's language that you would use in traditional definitions of APR. It's my first instinct. It's a funny way to talk about something that gets paid back in 35 days, and it's a funny way to measure it. Yes, I think it's very confusing, and I also think just bringing up another canon of contract construction, it renders the APR here completely meaningless. They're just taking your transaction cost, multiplying it by a totally arbitrary number that has nothing to do with your actual loan, and, of course, we're to read contracts so promises aren't illusory. But they would have been in trouble had they not mentioned APR. They had to mention APR. Under TILA, you have to mention APR, but I just bring back to my original point, Your Honor. TILA doesn't require you to make a promise of a fixed, unchanging, unvariable APR, and that's why they could have done exactly like the small case, exactly like other cases that they cite, and just tell the customer that your APR will change. Again, that seems to go to your TILA claim. I mean, they are assuming that it is an unchanging APR if it's repaid on 30 days, right? So the example they give is accurate. It's accurate if your loan is repaid on 30 days, but, of course, the loans aren't due on the 30-day mark. They're due whenever your direct deposit comes in. Thank you very much, Your Honors. Thanks to both of you for your helpful briefs and for answering our questions. We really appreciate it. The case will be submitted, and the clerk may call the next case.